IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 9, 2016 at Nashville


**STATE OF TENNESSEE v. ISEN BERRY**


**Appeal from the Circuit Court for Madison County**
**No. 14599      Roy B. Morgan, Jr., Judge**

_____


**No. W2015-01531-CCA-R3-CD  -  Filed February 12, 2016**

_____


The Defendant, Isen Berry, appeals the trial court's order revoking his community corrections sentence and ordering him to serve the balance of his six-year sentence in the Department of Correction.  He contends that the trial court abused its discretion in concluding that he had violated the conditions of his community corrections.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

George Morton Googe, District Public Defender; Jeremy B. Epperson, Assistant District Public Defender, Jackson, Tennessee, for the appellant, Isen Berry.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Jerry Woodall, District Attorney General; and Rolf G.S. Hazlehurst, Assistant District Attorney General, for the appellee, State of Tennessee.



**OPINION**


On February 17, 2015, the Defendant pleaded guilty to multiple counts of burglary of an automobile and theft in Madison County Circuit Court and was sentenced, pursuant to a plea agreement, to six years on community corrections.  On June 1, 2015, a probation violation report was filed, alleging that the Defendant had failed to obey the law by

committing the offenses of aggravated assault, domestic assault, preventing a person from calling 911, and reckless endangerment in Rutherford County.

At a revocation hearing, Desiree Brooks testified that the Defendant was the father of her daughter. Ms. Brooks stated that on March 11, 2015, the Defendant was visiting her and the child in her hotel room in Murfreesboro. When Ms. Brooks asked the Defendant to leave, he "got aggressive" and pushed her against a window. The Defendant then pushed Ms. Brooks onto the bed on top of their nine-month-old daughter, suffocating the child. When the Defendant got up, he prevented Ms. Brooks from using her cell phone. On cross-examination, Ms. Brooks agreed that she had previously been convicted of two counts of perjury in Gibson County.

Mary Ellen Lehue testified that she did not know the Defendant before March 11, 2015. On that day, Ms. Lehue and her daughter were staying in the hotel room next to Ms. Brooks's room. As Ms. Lehue and her daughter exited their room, they heard Ms. Brooks screaming for help through the "halfway open" door to Ms. Brooks's hotel room. Ms. Lehue saw the Defendant grab Ms. Brooks by her hair and raise his hand like he was going to strike Ms. Brooks. Ms. Lehue recalled that Ms. Brooks's face was "already bloodied," and she was screaming for help. Ms. Lehue told her daughter to call 911, and she asked the Defendant to stop. When the Defendant asked Ms. Lehue, "[w]hy am I the bad guy," she asked him to step out into the hall. Ms. Lehue then told him that the police had already been called. The Defendant then stated that he was on probation, and he went out to the parking lot and sat in his car. Ms. Lehue helped Ms. Brooks "off the floor." She noticed that Ms. Brooks's arm was "in an unnatural fashion" and that her face was "pretty badly bruised." When the police arrived, Ms. Lehue identified the Defendant, and he was arrested. On cross-examination, Ms. Lehue acknowledged that she did not see the beginning of the altercation between the Defendant and Ms. Brooks.

The Defendant acknowledged that he stopped to see Ms. Brooks and his daughter at a hotel room in Murfreesboro on March 11, 2015. According to the Defendant, Ms. Brooks had been upset over text messages from other women that she had seen on the Defendant's phone. Ms. Brooks began arguing with the Defendant, and when he attempted to leave, Ms. Brooks grabbed him "by [his] dreadlocks" and "snatched them out of [his] head[.]" The Defendant stated that Ms. Brooks pulled him onto the ground and "tussled" with him. He testified that he had opened the door right before Ms. Lehue intervened and that he told Ms. Lehue that Ms. Brooks had him by the hair. The Defendant denied abusing Ms. Brooks and stated that he did not run from the police because he had done nothing wrong. On cross-examination, the Defendant stated that he did not strike Ms. Brooks and that she was not bleeding when he left the room. When asked to explain Ms. Brooks's injuries, the Defendant said, "[Ms. Brooks] is a great actor if you ask me; she is."

Glenda Berry, the Defendant's mother, testified that she was familiar with Ms. Brooks. She stated that she had previously filed numerous police reports against Ms. Brooks and that the most recent police report concerned her suspicions that Ms. Brooks had scratched her car. Ms. Berry testified that Ms. Brooks had made false allegations against the Defendant in the past.

At the conclusion of the hearing, the trial court determined, by a preponderance of the evidence, that the Defendant had violated his probation as alleged in the violation report. The trial court specifically noted that it credited the testimony of Ms. Lehue over that of the Defendant. The trial court revoked the Defendant's community corrections and ordered the Defendant to serve his sentence in the Department of Correction. This timely appeal followed.

## Analysis

On appeal, the Defendant contends that the trial court abused its discretion in revoking his probation and ordering him to serve the balance of his sentence in confinement. He asserts that the testimony from the State's witnesses should not have been believed. The State responds that because this court cannot revisit credibility determinations, the Defendant's challenge to the revocation of his probation lacks merit. We agree with the State.

The decision to revoke a community corrections sentence rests within the sound discretion of the trial court. State v. Harkins, 811 S.W.2d 79, 82-83 (Tenn. 1991) (applying the probation revocation procedures and principles contained in Tennessee Code Annotated section 40-35-311 to the revocation of a community corrections placement based upon "the similar nature of a community corrections sentence and a sentence of probation"). To establish an abuse of discretion, the defendant must show that there is no substantial evidence in the record to support the trial court's determination regarding the violation. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2000) (citing Harkins, 811 S.W.2d at 82). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." State v. Phelps, 329 S.W.3d 436, 443 (Tenn. 2010). The violation of probation or community corrections need only be proven by a preponderance of the evidence. See Tenn. Code Ann. § 40-35-311(e)(1) (2014); see also Tenn. Code Ann. § 40-36-106(e)(3)(B) (2015).

If the evidence is sufficient to show a violation of the terms of supervision, the trial court may, within its discretionary authority, revoke the community corrections

sentence and require the defendant to serve his sentence in confinement "less any time actually served in any community-based alternative to incarceration." Tenn. Code Ann. § 40-36-106(e)(4) (2014). When the trial court does not alter the length, terms, or conditions of the sentence imposed, the court is not required to hold a sentencing hearing. See, e.g., State v. Samuels, 44 S.W.3d 489, 493 (Tenn. 2001) (observing that, before imposing "a new sentence" following a community corrections revocation, the trial court must conduct a sentencing hearing).

We conclude that the record supports the trial court's finding that the Defendant violated the conditions of his community corrections sentence by assaulting Ms. Brooks and that the trial court properly revoked the Defendant's community corrections sentence. See Tenn. Code Ann. § 40-35-311(e)(1). The proof accredited by the trial court established substantial evidence that the Defendant assaulted Ms. Brooks and violated the terms of his community corrections sentence. Ms. Lehue testified that she saw the Defendant grabbing Ms. Brooks by her hair and raising his hand like he was going to strike Ms. Brooks. Ms. Lehue stated that Ms. Brooks was screaming for help and that her face was "bloodied" and "badly bruised." Once the trial court properly revoked the Defendant's community corrections, it had the authority to order the Defendant to serve his sentence in confinement "less any time actually served in any community-based alternative to incarceration." See Tenn. Code Ann. § 40-36-106(e)(4). The Defendant is not entitled to relief.

## Conclusion

Based upon the foregoing, the judgment of the trial court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE